**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DEREK SIVO** | : | |
| | : | |
| **v.** | : | **C.A. No. 08-245S** |
| | : | |
| **A.T. WALL** | : | |

**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

For the reasons identified in its accompanying memorandum of law, designated party/respondent State of Rhode Island moves to dismiss Petitioner Derek Sivo's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L.WEISMAN, # 4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: July 14, 2008



PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

I hereby certify that on July 14, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of the within document to be sent to the following by first-class mail, on the same date:

Derek Sivo
P.O. Box 8274
Cranston, R.I. 02920

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DEREK SIVO** | : | |
| | : | |
| **v.** | : | **C.A. No. 08-245S** |
| | : | |
| **A.T. WALL** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Overview

Now comes the State of Rhode Island, by and through its attorneys, and moves to dismiss Petitioner Derek Sivo's Petition Under 28 USC § 2254 For A Writ Of Habeas Corpus By A Person In State Custody ("Petition"), for the reasons that 1) the second of the three issues raised by Petitioner[1] is unexhausted, and 2) the Rhode Island Supreme Court's decision denying Petitioner's remaining two claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

Relevant Background

The state procedural history of the case may be summarized as follows: Petitioner Sivo was charged in a Rhode Island criminal information with one count of first-degree child abuse of a child under the age of five. A jury trial began on October 15, 2002 in the Rhode Island Family Court. The jury returned a guilty verdict on October 23, 2002 and Sivo's motion for a new trial was denied on February 10, 2003. On March 24, 2003 the trial court sentenced Sivo to twenty

[1] Petitioner has raised three issues in his instant 28 U.S.C. § 2254 action: 1) a "[v]iolation of the Due Process Clause of the United States Constitution, U.S. Const. Amend. V, and XIV – denial of motion for judgment of acquittal"; 2) "[v]iolation of the Due Process Clause of the United States Constitution, U.S. Const. Amend. V, and XIV – erroneous jury instructions"; and 3) "[v]iolation of the United States Constitution, U.S. Const. Amend. VI, and XIV – United States v. Booker".

PDF created with pdfFactory trial version www.pdffactory.com

years at the Adult Correctional Institutions ("ACI"), twelve years to serve with the remaining eight years suspended, eight years probation. Thereafter, Petitioner filed a timely appeal, which was docketed in the Rhode Island Supreme Court on or about December 13, 2004. On January 19, 2005, the Rhode Island Supreme Court remanded the case to the Family Court for a hearing on various motions. Upon the completion of those hearings the appeal was re-docketed in the Rhode Island Supreme Court on April 14, 2005. Prebriefing statements were written and in the interim Sivo requested to be released on bail pending appeal. On June 29, 2005, the Rhode Island Supreme Court issued an order granting Sivo's request for bail pending appeal and setting surety bail in the amount of $50,000.00. Shortly thereafter, upon posting bail, Sivo was released. Sivo's appeal from conviction was subsequently set down for full briefing and oral argument, and the Rhode Island Supreme Court, on June 15, 2007, issues a decision affirming Mr. Sivo's judgment of conviction. State v. Sivo, 925 A.2d 901 (R.I. 2007).

Contentions Advanced by Petitioner

1. Petitioner's second contention in this action is of a "[v]iolation of the Due Process Clause of the United States Constitution, U.S. Const. Amend. V, and XIV – erroneous jury instructions", more particularly, that such "instructions permitted a conviction predicated on an act without criminal mens rea" and "therefore violated the law established by the Constitution of the United States and the United States Supreme Court. Accidentally or unintentionally causing injury to a child is not a criminal act. *See;* Morrisette v. United States, 342 U.S. 245 (1952)." (Petitioner's Attachments to Petition for Writ of Habeas Corpus at 1-2.) A review of the jury instruction issue raised by Petitioner on appeal before the Rhode Island Supreme Court[2] indicates that Petitioner's particular challenge to the jury instruction issue was that the "trial justice erred

[2] The comprehensive discussion of the jury-instruction issue raised by Petitioner before the Rhode Island Supreme Court may be found at State v. Sivo, 925 A.2d at 912-16.



PDF created with pdfFactory trial version www.pdffactory.com

in instructing the jury, contrary to established Rhode Island law, as set forth in State v. Lima, 546 A.2d 770 (R.I. 1988), that the state was not obliged to prove intent to inflict injury." (Brief of Defendant Sivo filed in the Rhode Island Supreme Court in State v. Sivo, 04-358-C.A. at pp. 39-48.) Nowhere in such brief does it appear that Petitioner raised the federal constitutional issue he instantly advances. Since federal habeas relief is only available to petitioner after he has first exhausted his remedies in the Rhode Island Courts, or where "there is [either] an absence of available State corrective process *** or [the existence of] circumstances *** that render such process ineffective to protect [his] rights[,]" 28 U.S.C. § 2254[3] (*see* O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731 (1999)), the state would respectfully suggest that

[3] As amended by the Antiterrorism and Effective Death Penalty Act of 1996, Public Law No. 104-132, 110 Stat. 1214, effective April 24, 1996, 28 U.S.C. § 2254 now states in relevant part:

> "(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State.
>
> .. . ..
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."



PDF created with pdfFactory trial version www.pdffactory.com

petitioner's 28 U.S.C. § 2254 petition, alleging a ground which has not yet been passed upon by the Rhode Island Supreme Court, should be dismissed at this time.

In any event, the State would contend that even if this issue had been properly exhausted, this Honorable Court could readily dispose of it on the merits. As the Rhode Island Supreme Court aptly stated in the course of denying the jury instruction issue which Petitioner did raise on direct appeal before the Rhode Island Supreme Court:

> [W]e are convinced that the trial justice did not err when he instructed the jury on § 11-9-5.3's intent requirement. He instructed the jury that it could convict defendant only if the jurors found that he acted "knowingly or intentionally," using the General Assembly's exact words of intent. The trial justice further clarified that acting "knowingly or intentionally" meant that defendant must have acted deliberately or purposely and not by way of accident or innocent mistake, thereby making clear that the jury could not convict defendant without finding that he had the required *mens rea*. Thus, we hold that the trial justice did not err when he instructed the jury on the intent element of first-degree child abuse.

(State v. Sivo, 925 A.2d at 912-13.)

The second contention, then, advanced by Petitioner may be easily be dismissed on the merits, even if it had properly been exhausted.

2. Petitioner's remaining two issues do appear to have been raised by him on direct appeal before the Rhode Island Supreme Court, and the question then becomes one of review of the propriety of the Rhode Island Supreme Court's challenged legal determinations pursuant to 28 U.S.C. § 2254(d), providing that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or



PDF created with pdfFactory trial version www.pdffactory.com

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

The terms "contrary to" and "unreasonable application" in § 2254 have independent meaning. See Bell v. Cone, 535 U.S. 685, 694 (2002). The "contrary to" clause applies only when a state court either employs a test or rule of law that is inconsistent with one announced by the United States Supreme Court or reaches the opposite conclusion on materially indistinguishable facts. See id.; Williams v. Taylor, 529 U.S. 362, 404-10 (2000); Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). An "unreasonable application" of federal law exists when a state court (1) uses the correct legal standard in an objectively unreasonable manner, (2) unreasonably extends Supreme Court precedent to an inappropriate context, or (3) fails to extend such Supreme Court precedent to an appropriate context. See Bell, 535 U.S. at 694; Rashad, 300 F.3d at 34-35. This standard "does not demand infallibility: a state court's decision may be objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." Rashad, 300 F.3d at 34-35.

Moreover, an unreasonable application of Supreme Court precedent is not the same as an erroneous application; "the mere fact that there was some error or that the state decision was incorrect is not enough." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court. If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36-37.

Finally, "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad, 300 F.3d at 35-



PDF created with pdfFactory trial version www.pdffactory.com

36 (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). Unless a petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts on the trial and appellate levels. Id. This includes those reasonable inferences drawn by the state courts from the evidence presented at trial as well as the trial record. Id. at 39 n.8.

a) Applying this standard first to Petitioner's claim that the Rhode Island Supreme Court unreasonably applied clearly established federal law in affirming the trial justice's denial of defendant's motion for judgment of acquittal,[4] it would seem that this type of claim is cognizable

[4] The Rhode Island Supreme Court rejected this claim after undertaking the following comprehensive analysis:

> This Court's standard of review when evaluating the denial of a motion for judgment of acquittal is well established: We apply the same standards as those applied by the trial justice. State v. Briggs, 886 A.2d 735, 760 (R.I.2005). In doing so, we view the evidence in the light most favorable to the state, without weighing evidence or assessing witness credibility, and we draw all reasonable inferences consistent with guilt from the evidence. *Id.* (citing State v. Grayhurst, 852 A.2d 491, 519-20 (R.I.2004)). Viewing the evidence in this light, a trial justice's denial of a motion for a judgment of acquittal will be upheld if the evidence is sufficient to sustain a jury verdict of guilty. State v. Mendoza, 889 A.2d 153, 159 (R.I.2005).
>
> Section 11-9-5.3(b)(1) defines first-degree child abuse, in relevant part, as follows:
>
> "(b) Whenever a person having care of a child *** whether assumed voluntarily or because of a legal obligation, including any instance where a child has been placed by his or her parents *** for care or treatment, knowingly or intentionally:
>
> "(1) Inflicts upon a child serious bodily injury, shall be guilty of first degree child abuse."
>
> Thus, the state must prove beyond a reasonable doubt that: (1) the victim was a child; (2) the victim was in the defendant's care; (3) the defendant inflicted serious physical injury upon the victim; and (4) the defendant did so knowingly or intentionally. The state may satisfy this burden by resting its case upon circumstantial evidence alone and need not disprove all



PDF created with pdfFactory trial version www.pdffactory.com

possible theories of innocence so long as "the totality of the circumstantial evidence offered constitutes proof of guilt beyond a reasonable doubt." State v. Caruolo, 524 A.2d 575, 581 (R.I.1987)(citing In re Derek, 448 A.2d 765, 768 (R.I.1982)). "Therefore, when measuring the sufficiency of the state's evidence, no distinction is to be drawn between circumstantial and direct evidence and the only standard for ruling the evidence insufficient is a reasonable doubt of guilt." *Id.* Thus, "[t]he pivotal question in determining whether circumstantial evidence is sufficient to prove guilt beyond a reasonable doubt is whether the evidence in its entirety constitutes proof beyond a reasonable doubt or is of such a nature that it merely raises a suspicion or conjecture of guilt." *Id.* If, however, the initial inferences "rest [ ] upon an ambiguous fact that is equally capable of supporting other reasonable inferences clearly inconsistent with guilt," the pyramiding of inferences becomes speculative and insufficient to prove guilt beyond a reasonable doubt. *Id.* at 582.

Here, defendant contends that, even when viewed in a light most favorable to the state, insufficient evidence was presented to allow the jury to find beyond a reasonable doubt that John Jr.'s injury occurred specifically during the time defendant was caring for him. This dearth of evidence, defendant argues, forced the jury to speculate about what exactly happened to John Jr. and when, and likens his situation to that of the defendants in two sister-state decisions: State v. Reber, 71 N.C.App. 256, 321 S.E.2d 484 (N.C.App.1984) and Moriarity v. State, 620 N.E.2d 696 (Ind.1993). We disagree.

After examining both Reber and Moriarity, we are convinced that they present circumstances distinguishable from defendant's. In Reber, the defendant was convicted of felonious child abuse in violation of a North Carolina statute requiring that the state prove the defendant " *intentionally* inflicted a serious injury *** which resulted in the substantial impairment of the child's physical health." Reber, 321 S.E.2d at 484, 486 (emphasis added). The defendant's sole argument on appeal was that the state presented insufficient evidence at trial to establish his guilt. *Id.* at 485. The court concluded that the state only established that the child's health was seriously impaired by *some* injury, but that it failed to show that the child's injury was inflicted by the defendant or that the defendant intentionally inflicted the injury. *Id.* at 486. The court was concerned that the jury would have had to make an impermissible inference that the defendant intentionally inflicted the injury from only an inference supplied by the testimony of two doctors-that this child with a history of unexplained illnesses who exhibited signs of child abuse was, in their *opinion,* injured intentionally. *Id.* Even when viewed in connection with evidence that the child's condition was fine when her mother left their house, but was critical when she returned a few minutes later, the court held that the doctors' testimony provided an insufficient basis for the jury to find beyond a reasonable doubt that the defendant *intentionally* injured his daughter. *Id.* at



PDF created with pdfFactory trial version www.pdffactory.com

484, 486. The Reber court was particularly concerned that witnesses were unable to provide a time frame during which the injury must have occurred. ***Id.*** at 486. Thus, the court held that the defendant's conviction could not stand. ***Id.*** at 487.

In Moriarity, a jury convicted the defendant of murder for the death of his infant son, who doctors testified died from a massive blood clot on his brain. Moriarity, 620 N.E.2d at 696-97. The defendant claimed on appeal that the evidence presented at trial was insufficient to sustain his murder conviction. ***Id.*** at 697. Testimony showed that the only time the defendant was alone with the baby the day of the injury was for approximately one hour and five minutes during which the baby stopped breathing. ***Id.*** Testimony further indicated that the child's injury-a single blow to his head that produced no bruising or other external evidence of injury-could have been caused by a slap from a human hand or by contact with a flat padded surface occurring between twenty minutes and six hours before defendant called 911 for help. ***Id.*** at 697-98. The Indiana Supreme Court reasoned that because, "under the [s]tate's evidence, the blow suffered by the child could well have occurred prior to the child being left in the care of [the defendant,]" and because no evidence was presented from which a reasonable juror could find that the defendant " ***deliberately*** injured the child[,]" the conviction rested on suspicion of guilt alone and not credible evidence of guilt beyond a reasonable doubt. ***Id.*** at 698 (emphasis added). Therefore, the court held that the defendant's conviction could not stand. ***Id.***

In denying defendant's motion for judgment of acquittal in this case, the trial justice correctly stated that his role was to draw "all reasonable inferences consistent with guilt" and not to weigh the evidence or assess credibility. The trial justice noted that the record was clear that the child, John Jr., was under eighteen years of age. He also noted that uncontested evidence showed that defendant was John Jr.'s caretaker at the time the child allegedly fell on November 1. The trial justice also found that John Jr.'s injury constituted a serious bodily injury that resulted in permanent damage. In fact, the only contested issues at trial involved exactly when and how John Jr.'s injury occurred. The state alleged that the injury occurred on November 1, the day before John Jr. was admitted to Hasbro with a subdural hematoma. The state's expert witnesses, who treated John Jr. at Hasbro, testified that John Jr.'s injury involved a "new bleed" caused by a nonaccidental trauma suffered only twenty-four to forty hours before his admission to Hasbro, which trauma would have immediately caused John Jr. to lose his ability to stand or walk and become groggy and unresponsive. Based on this evidence, the trial justice found that the state presented sufficient evidence for the jury to reasonably conclude that defendant was guilty beyond a reasonable doubt, and denied defendant's motion for judgment of acquittal.

Our review of the record confirms both the accuracy and adequacy of the trial justice's review of the evidence. There was no gap in the evidence



PDF created with pdfFactory trial version www.pdffactory.com

in federal habeas corpus pursuant to Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89 (1979), wherein the United States Supreme Court held in most relevant part that in an appeal challenging the sufficiency of the evidence, the "critical inquiry" is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The State would respectfully contend that the Rhode Island Supreme Court's determination of this question can in no way be deemed an unreasonable application of clearly established federal law.

Rather, the Rhode Island Supreme Court quite properly recognized that 1) the trial justice correctly viewed "his role [as] *** to draw 'all reasonable inferences consistent with guilt' and not to weigh the evidence or assess credibility" (State v. Sivo, 925 A.2d 901, 911 (R.I. 2007)), and 2) reasonable inferences supported the trial justice's determination that it was the Defendant,

---

> presented in this case that would require the speculation and conjecture that troubled the appellate courts in Reber and Moriarity. In this case, the state presented uncontested evidence that Kim left John Jr., who was functioning normally, in defendant's custody when she went to work at about 11:15 a.m. on November 1. When Kim returned home around 6:30 p.m., defendant told her that John Jr. was sick and in bed sleeping. The next morning, John Jr. did not wake up on his own, was unresponsive, and was unable to hold himself up. The state's expert doctors, who treated John Jr. at Hasbro, testified that the injury producing John Jr.'s "new bleed" occurred within twenty-four to forty hours before he was admitted to the hospital in the early afternoon on November 2. They also testified that John Jr. would not have been able to walk, talk, or function immediately after the injury, which they classified as "nonaccidental." Because John Jr. was walking, talking, and functioning when Kim left the house on the morning of November 1, the evidence presented was sufficient to permit a reasonable juror to conclude that John Jr. was in defendant's exclusive care all day, that John Jr.'s injury occurred during the time defendant was caring for him, and that it was defendant-being John Jr.'s lone caretaker-who caused the nonaccidental head trauma. Accordingly, we uphold the trial justice's decision to deny defendant's motion for judgment of acquittal.

(State v. Sivo, 925 A.2d at 909-12.)



PDF created with pdfFactory trial version www.pdffactory.com

and not John Jr.'s mother, who was responsible for inflicting the nonaccidental trauma upon John Jr. on November 1, 2001 (*id.* at 911-12). As indicated in the Rhode Island Supreme Court's opinion, the trial evidence, when viewed in the light most favorable to the State,[5] ***was*** in fact sufficient to have implicated the Defendant in the devastating, nonaccidental, injuries to John Jr.. Contrary to Petitioner's contentions, there most certainly ***was*** trial evidence indicating that – while John Jr. may have had a run-of-the-mill viral or other infection prior to when his mother left for work on November 1, 2001[6] – by the time John Jr.'s mother returned from work a number of hours later, John Jr. "wasn't moving his right side" and had to be awaken the following morning and carried by his mother to the pediatrician's office, where it was immediately determined that John Jr. had to go directly to the emergency room because his pediatrician had observed that John Jr. was "not awake", couldn't hold himself up, "definitely could not bear weight or walk", was "quite ill", and had "something serious[ly] wrong with him, with his blood pressure, weight, pulse" (Tr. 97).[7] This testimony, coupled with the medical

[5] It is well settled Rhode Island law that, when passing upon a judgment of acquittal motion, a trial court as well as the Rhode Island Supreme Court "view[s] the evidence in the light most favorable to the state, without weighing evidence or assessing witness credibility, and *** draw[ing] all reasonable inferences consistent with guilt from the evidence." State v. Sivo, 925 A.2d at 909-10.

[6] ***See*** the mother's testimony indicating that on the morning before she left for work, John Jr. had "woke[n] up at his usual time, 7:30, 8:00" (Tr. 340), and that while he complained that he wasn't feeling well, he had no temperature (Tr. 341) and she wasn't concerned about leaving him for the day because he was only "a ***little*** sick" a "little" "whiny and cranky" (Tr. 343)(emphasis added), and she thought that he might or might not merely have "had a little cold" (Tr. 346). John Jr., that is, was most certainly capable of walking and talking when his mother went to work and left him in the care of the Defendant. Indeed, even for a time when his mother was ***at*** work, when she called the Defendant at about 3:30 or 4:30 in the afternoon to check on her son, the Defendant reported that while John Jr. was "sick, whiny and cranky" he was otherwise "alright", "other than that [John Jr. being whiny and cranky] he was ***fine***" (Tr. 343 (emphasis added).)

[7] Petitioner's contentions, moreover, apparently overlooks the common-sensible fact that the reason John Jr.'s mother did not recognize the extent of John Jr.'s incapacitation until her son failed to wake up the following morning, was because, even when she went into John Jr.'s room



PDF created with pdfFactory trial version www.pdffactory.com

experts' testimony that John Jr. would have been unable to walk or talk normally and would effectively have been rendered at least partially unconscious (Tr. 246, 310, 259, 288-90) *immediately upon suffering* the nonaccidental subdural hematoma he did (Tr. 218-20, 232, 243, 246, 250-2, 257-59, 271, 290, 302-03, 259 (right after receiving the nonaccidental, subdural hemotoma, inducing-trauma, John Jr. "would not be of his normal level of consciousness"), 288 ("ordinary behaviors like talking, walking, watching television, making eye contact with his mother or another adult couldn't happen"), 289 ("injury *** [in]consistent with any kind of lucid interval."), 290 ("immediately after the injury he was abnormal, no question in my mind."), 259 (right after receiving the trauma, John Jr. "would not be of his normal level of consciousness")) narrowed the perpetrator down to the Defendant, as the sole person who was alone and with John Jr. from the time his mother left for work until she returned home on the evening of November 1, 2001 to find both the Defendant and her son asleep in bed. Viewing the trial evidence in the light most favorable to the State, then, the Rhode Island Supreme Court quite properly determined that the trial court did not err in finding that the State produced legally sufficient evidence of the Petitioner's guilt beyond a reasonable doubt.

This determination by the Rhode Island Supreme Court, then, can in no way be deemed an unreasonable application of clearly established federal law.

b) The second substantive claim reviewed under the very deferential standard of 28 U.S.C. § 2254(d), is Petitioner's claim that his Sixth Amendment Right was violated by the trial justice's instruction to the jury concerning the age of the victim, an element of the R.I.G.L. § 11-9-5.3 offense. (Petitioner's Attachments to Petition for Writ of Habeas Corpus at 2.) The Rhode Island Supreme Court discussed and determined this issue as follows:

---

to take his temperature and give him Motrin, she naturally assumed that John Jr. was as relatively unconscious as he was because he was merely sleeping for the evening.



PDF created with pdfFactory trial version www.pdffactory.com

The trial justice instructed the jury on first-degree child abuse, in relevant part, as follows:

"There are four elements that the state must prove beyond a reasonable doubt: number one, that the victim was a child, and by law a child under the age of eighteen years of age. And I charge you as a matter of law that that issue and that element has been proven, and that there is no dispute on that element.

"The second element is that the defendant had care of the child.

"The third element is that the defendant inflicted upon said child serious bodily injury.

"And four, that the defendant did so knowingly and intentionally.

"Now, the first element I have indicated to you, you must accept as proven, proven already.

"* * *

"The state must also prove beyond a reasonable doubt that the defendant *** intended to do the described acts, knowingly and intentionally; a person acting knowingly and intentionally when he or she does an act deliberately and purposely, and does not do so of mistake or accident or other innocent reason.

"Child abuse is a general intent crime. General intent means that a person means to commit the act itself without a specific intent to bring about some particular end or result."

The defendant alleges [that] *** the trial justice erroneously instructed the jury that the child's age already was proven as a matter of law, thus removing from the jury's deliberations an essential element of the crime.

When this Court reviews a challenged jury instruction, we examine the charge "in its entirety, 'in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give [to the instructions].'" Saber v. Dan Angelone Chevrolet, Inc., 811 A.2d 644, 653 (R.I.2002) (quoting Patino v. Suchnik, 770 A.2d 861, 866 (R.I.2001)). The trial justice is bound to ensure that the jury charge "sufficiently addresses the requested instructions and correctly states the applicable law." State v. Coleman, 909 A.2d 929, 938 (R.I.2006)(quoting State v. Aponte, 800 A.2d 420, 427 (R.I.2002)). However, "[a]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." Saber, 811 A.2d at 653 (quoting Patino, 770 A.2d at 866).



PDF created with pdfFactory trial version www.pdffactory.com

***

The defendant argues that the trial justice violated his constitutional rights by directing a verdict on an element of the offense. As previously stated, at the close of trial, the trial justice instructed the jury that the first element of first-degree child abuse is that the victim must be a child under age eighteen. With respect to that element, the trial justice stated, “I charge you as a matter of law that that issue and that element has been proven, and there is no dispute on that element.” He then reiterated his charge to the jury, stating “[n]ow, the first element I have indicated to you, you must accept as proven, proven already.” At the side bar, defense counsel said,

“As to the age * * *, age still has to be proved.

“ * * *

“There is still an element that has to be proven. They have to accept [the testimony concerning John Jr.'s age] to be proof beyond a reasonable doubt, so I object to that.”

In response to defendant's objection, the trial justice stated, “[t]he date of birth was issued. There is no question in this Court's mind that the age of the child has been determined and fits the statutory scheme. They dont have to go through that element. It has been proven beyond a reasonable doubt.”

The United States Supreme Court has said that the “Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged.” United States v. Booker, 543 U.S. 220, 230, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (citing United States v. Gaudin, 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)). Concerning this same notion, this Court has held that a jury instruction that relieves the state of its burden of proving each element of a crime charged beyond a reasonable doubt violates a defendant's due process rights. ***See*** State v. Hazard, 745 A.2d 748, 751 (R.I.2000).

Nevertheless, a trial justice’s error in removing an element of the crime from the jury’s consideration does not automatically warrant reversal. Rather, this Court will affirm the conviction as long as it concludes the error was harmless beyond a reasonable doubt. Hazard, 745 A.2d at 752.

“Under this approach, ‘an instructional omission, misdescription, or conclusive presumption can be subject to harmless-error analysis ***: (1) where the defendant is acquitted of the offense on which the jury was improperly instructed ***; (2) where the defendant admitted the element on which the jury was improperly instructed; and (3) where other facts necessarily found by the jury are the “functional equivalent” of the omitted, misdescribed, or presumed element.’ ” ***Id.*** at 753 (quoting Neder v. United States, 527 U.S. 1, 13, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

In this case, although it was error for the trial justice to instruct the jury that the child’s age was proven beyond a reasonable doubt, that error was



PDF created with pdfFactory trial version www.pdffactory.com

> harmless. Throughout defendant's closing argument he repeatedly referred to the victim as a child. Furthermore, at trial, the victim's parents both testified to their son's date of birth, yet defendant did not object to this testimony and did not cross-examine or offer disputing evidence on that issue. The only time defendant objected to the classification of John Jr. as a child was at the close of trial when the trial justice rendered his jury instructions. Finally, throughout trial it was uncontroverted that the victim was treated by a pediatrician at a children's hospital. This evidence makes it inconceivable that a jury could have found this element unproven even absent the trial justice's erroneous instruction.
>
> Because no prejudice resulted to defendant, we are of the opinion that the error was harmless beyond a reasonable doubt and does not require a new trial.

(State v. Sivo, at pp. 904-914.)

Reviewing the propriety of this comprehensive determination, it cannot be said that it constitutes a decision contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. For this reason, the State would respectfully suggest that Petitioner's final contention also lacks substantive merit.

Conclusion

For these reasons – because the second of the three issues raised is unexhausted and, in any event, lacks substantive basis, and the remaining two issues were quite properly determined by the Supreme Court of Rhode Island – Respondent would most respectfully ask that this Honorable Court dismiss Mr. Sivo's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody.[8]

[8] In accordance with Rule 5(c) of the Rules Governing Section 2254 Cases In The United States District Courts, the Department of Attorney General states that it does not at this time possess the official transcripts relating to Derek Sivo's Family Court trial. The official transcripts should be on file in state court and may be available upon request; the amount of time it would take to furnish the transcripts would depend on whether the file is located at the state court clerk's office or whether the clerk previously transferred the file to an off-site records center for long-term storage.



PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L. WEISMAN, #4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: July 14, 2008

**CERTIFICATION**

I hereby certify that on July 14, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I sent a copy of the within document to the following by first-class mail, on the same date:

Derek Sivo
P.O. Box 8274
Cranston, R.I. 02920

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com